RECEIVED BY MAIL

FEB 07 2018

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CLERK, U.S. DISTRICT COURT
DULUTH, MINNESOTA

| | |
|---|---|
| CALVIN BRUCE, | Civil No. ___:18-cv-__346 WMW JTNL |
| Petitioner, | Crim No. 3:07-cr-00057-bbc-1 |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241** |
| WARDEN, FCI Sandstone, | |
| Respondent. | Respondent. |

COMES Petitioner, CALVIN BRUCE ("Bruce"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. STATEMENT OF JURISDICTION

Title 28 United States Code, Section 2241 confers jurisdiction on district courts to issue writs of habeas corpus in response to a petition from a state or federal prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2241(a) and (c)(3). A petition for habeas corpus under 28 U.S.C. § 2241 must be filed in the district of confinement. *Nichols v. Symmes*, 553 F.3d 647 (8th Cir. 2009). A federal prisoner must challenge the legality of his detention by motion under 28 U.S.C. § 2255, but may challenge the manner or execution of his sentence under 28 U.S.C. § 2241. *Deroo v. United States*, 709 F.3d 1242 (8th Cir. 2013).

1

SCANNED

FEB 0 7 2018

U.S. DISTRICT COURT DULUTH

## II. STATEMENT OF THE GROUND FOR REVIEW

A.      Whether, in light of *Mathis v. United States*, 136 S.Ct. 2243 (2016), *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016) and *Holt v. United States*, (No. 16-1793) (7th Cir. Dec. 13, 2016), Bruce's prior convictions do not qualify him as a career offender requiring resentencing without the career offender enhancement.

B.      Whether, in light of *Descamps v. United States*,133 S.Ct. 2276 (2013) and *Mathis v. United States*, 136 S.Ct. 2243 (2016), Bruce's prior conviction enhancement under 21 U.S.C. § 851 is null and void.

## III. STATEMENT OF THE CASE

### A.      Procedural Background

On April 20, 2007, a grand jury sitting in the United States District Court for the Western District of Wisconsin, Madison Division, returned a one (1) count Indictment charging Bruce. See Doc. 2.[1] Count 1 charged Bruce with Possession with Intent to Distribute Fifty Grams or More of Cocaine Base (Crack Cocaine), in violation of 21 U.S.C. §§ 841(a)(1). *Id.*

On June 18, 2007, the government filed a Notice of Enhancement, pursuant to 21 U.S.C. § 851. See Doc. 38.

---

[1]

"Doc." refers to the Docket Report in the United States District Court for the Western District of Wisconsin, Madison Division in Criminal No. 3:07-cr-00057-bbc-1, which is followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

On August 14, 2007, a jury trial commenced. See Doc. 80.

On August 15, 2007, the jury returned a guilty verdict as to Count 1 of the Indictment. See Docs. 82, 84.

On October 31, 2007, Bruce was sentenced to a term of 360 months' Imprisonment, 10 years Supervised Release, no fine or restitution, and a Mandatory Special Assessment Fee of $100. See Doc. 90.

On November 2, 2007, Bruce timely filed a Notice of Appeal. See Doc. 92.

On December 28, 2008, the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit") affirmed Bruce's conviction, but vacated and remanded to District Court for resentencing. See Doc. 107.

On February 20, 2009, Bruce was resentenced to a term of 324 months' Imprisonment, 10 years Supervised Release, no fine or restitution, and a Mandatory Special Assessment Fee of $100. See Doc. 110.

On February 25, 2009, Bruce timely filed a Notice of Appeal re: Amended Judgment. See Doc. 113.

On May 26, 2010, the Seventh Circuit issued a Judgment dismissing Bruce's appeal. See Doc. 119.

On July 14, 2011, Bruce filed a Motion for New Trial Based on Newly Discovered Evidence ("Motion for New Trial"). See Doc. 120.

On July 28, 2011, the Court issue an Order denying Bruce's Motion for New Trial. See Doc. 121.

On September 29, 2011, Bruce filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"). See Doc. 125.

On January 31, 2012, the Court issue an Order denying Bruce's § 2255 Motion. See Doc. 126.

On May 16, 2012, Bruce filed a Petition for Writ of Certiorari. See ROA 59.

On June 18, 2012, the Supreme Court denied Bruce's Petition for Writ of Certiorari. See ROA 63.

On June 12, 2014, Bruce filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and Memorandum of Law in Support ("§ 2255 Motion"). See Docs. 39 & 40.

On December 3, 2015, Bruce filed a Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(2) ("§ 3582 Motion"). See Doc. 44.

On April 1, 2016, the Court issued an Order denying Bruce's § 3582 Motion. See Doc. 48.

On April 10, 2017, the Court issued an Order denying Bruce's § 2255 Motion. See Doc. 53.

## B.   <u>Statement of the Facts</u>

### 1.   <u>Offense Conduct</u>

On the afternoon of March 28, 2007, Bruce was a passenger in a car that was stopped by officers of the Dane County (Wisconsin) Narcotics and Gang Task Force. During the stop, the police discovered an outstanding warrant for Bruce's arrest and took him into custody. Bruce used his cell phone to call his girlfriend, Endia Matthews ("Matthews"), who drove to the scene of the traffic stop. After Matthews arrived, the police learned that she was on probation and had driven to the scene on a revoked driver's license. The police did not arrest her, but asked for consent to search her house. Matthews consented. The police obtained the keys to the house from Bruce, who was then taken to a police station for questioning.

Madison Police Detective Dorothy Rietzler ("Rietzler"), Officer Denise Markham ("Markham") and Officer Jason Baumgart ("Baumgart ") went to Matthews' house to conduct the search and to interview Matthews. At the house, they found $2,580 in cash in a jacket belonging to Bruce. They also found a bag containing crack cocaine and pepper in the engine compartment of a van parked in the garage. Other drug paraphernalia were found throughout the house. Matthews denied any knowledge about the drugs or the money.

After completing the search, the police officers went to the station to interview Bruce. Detective Rietzler led the interview, portions of which also were attended by Officers Markham and Baumgart. Before the interview began, Detective Rietzler turned on an audio recorder. Bruce initially denied any knowledge about the drugs and the money. Eventually, however, he admitted that the money belonged to him and also admitted that there were "about two ounces" of crack in the van. See Doc. 75 at 26. Detective Rietzler offered Bruce "a chance to help [him]self" by working with police to incriminate "the big fish"-that is, other drug dealers who sold larger amounts of drugs. *Id.* 75 at 20, 21. Bruce agreed to assist the police and began by telling them the name and location of one of the dealers from whom he bought drugs. Detective Rietzler then turned off the audio recorder but continued the interview for twenty more minutes.

2.    Trial Proceeding

Bruce's jury trial was held in August 2007. At trial, the government presented the recovered money, the crack cocaine found in the van, the drug paraphernalia found in the house and garage, and mail addressed to Bruce at Matthews' address. Detective Rietzler, Officer Markham and Officer Baumgart testified about the recorded part of the interview, portions of which were played for the jury. Detective Rietzler and Officer Markham testified that, after the recorder was turned off, Bruce

6

continued to be relaxed and cooperative. They also testified that Bruce dated and initialled a photo of another dealer from whom he had purchased crack in the past. This photo was admitted as evidence.

Bruce's counsel was permitted to cross-examine the officers about the content of the interview and the circumstances surrounding it, including the fact that Detective Rietzler had stopped the recording. His counsel was not, however, allowed to mention the Wisconsin statute regarding the recording of custodial interrogations.

At the end of the trial, the court gave a model jury instruction instead of Bruce's proposed instruction on the recording of interrogations. The jury convicted Bruce on the sole count of the indictment. Case was referred to the Probation Office for the preparation of the PSR.

### 3.   Presentence Report Calculations and Recommendations

The presentence investigation report was prepared on October 3, 2007, and it recommended a Base Offense Level of 38 because Bruce was deemed to be a career offender, who otherwise would have had a Base Offense Level of 37, distributed more than 1.5 kilograms of crack cocaine. See PSR ¶¶ 26, 33). Pursuant to the career offender guideline, USSG § 4B1.1(b), the greater of the two offense levels was applied. See PSR ¶¶ 32, 33. Bruce had 16 criminal history points, which placed him in Criminal History Category VI. See PSR ¶ 53. The Guideline range for offense

levels 37 and 38, paired with Criminal History Category VI, are both 360 months to life in prison.

### 4.   Sentencing Proceeding

Bruce was sentenced on October 31, 2007. The court determined that Bruce's past criminal record qualified him as a career offender under Section 4B1.1 of the United States Sentencing Guidelines. Accordingly, the court calculated his base offense level under both the drug quantity table Guideline, § 2D1.1(c), and the career offender Guideline, § 4B1.1(b). The court found that Bruce's offense, including relevant conduct, involved 3.28 kilograms of crack cocaine, resulting in a Base Offense Level of 38 under Section 2D1.1(c). Bruce's Base Offense Level under Section 4B1.1(b) was 37 because the maximum statutory sentence for his offense was life in prison. Because the drug quantity table's offense level of 38 was the higher of the two, the court used this latter offense level to determine Bruce's sentencing range under the Guidelines. The court also determined that Bruce's prior convictions placed him in Criminal History Category VI. The Guidelines sentencing range for level 38 in Category VI is 360 months to life.

Bruce's counsel pointed out to the court that amended Guidelines were expected to take effect the next day (November 1, 2007) that would reduce the offense level for someone in Bruce's position from 38 to 36. Counsel acknowledged,

however, that this reduction would have no effect on Bruce's sentencing range because he then would be sentenced at the career offender offense level of 37, which also prescribes a range of 360 months to life for offenders in Criminal History Category VI. The court sentenced Bruce to 360 months' imprisonment, to be followed by 10 years of supervised release.

The next day, the 2007 Sentencing Guidelines took effect. The new Guidelines reduced the Section 2D1.1 offense level by two levels for all crack offenses. The United States Sentencing Commission subsequently decided that this reduction should be retroactive. On November 2, 2007, a timely Notice of Appeal was filed. See Doc. 92.

5.   Appellate Proceeding

On appeal, Bruce challenged the following issues: (1) that the district court's exclusion of any mention of the Wisconsin recording statute violated his right to a fair trial; and (2) that the Supreme Court's decision in *Kimbrough v. United States*, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), entitles him to a remand for resentencing. The Seventh Circuit subsequently remanded for resentencing solely to give the district court an opportunity to indicate whether it would have imposed the same sentence if it had known it could depart from the 100:1 crack/powder cocaine ratio. See *United States v. Bruce,* 550 F.3d 668, 676 (7th Cir. 2008).

On February 20, 2009, a resentencing hearing was held and the Court reduced

Bruce's sentence to 324 months, which was below the range of 360 months to life in

prison. See Doc. 110. Bruce appealed again and his attorney filed a brief pursuant to

*Anders v. California*, 386 U.S. 738 (1967), contending it would be frivolous for

Bruce to argue that his below-guidelines sentence was unreasonable. Bruce objected

to his attorney's motion to withdraw, but in a May 26, 2010, unpublished Order, the

Seventh Circuit agreed that the district court properly justified the below-guidelines

sentence and that it had never held a below-range sentence to be unreasonably high.

Bruce filed a petition for writ of certiorari, which the Supreme Court denied on

October 6, 2010. He

### 6.   Postconviction Proceeding

On September 29, 2011, Bruce filed his timely § 2255 Motion, contending that

he was denied his constitutional right to the effective assistance of counsel in two

respects: (1) his lawyer failed to challenge his sentencing for possessing 50 grams or

more of crack cocaine when that amount was never charged in the indictment or

proven to the jury; and (2) his lawyer failed to advise him he had a constitutional right

to testify and in fact refused to allow him to testify.

The Court denied Bruce's motion, explaining that Bruce's trial counsel had no

reason to challenge his sentence. The indictment returned against defendant charged

him specifically with possession of 50 grams or more of crack cocaine and the jury found that he had possessed this amount. As to his claim that counsel did not advise him of his constitutional right to testify, Bruce has produced nothing to support this claim. A bare allegation does not require the court to hold an evidentiary hearing on the issue, let alone grant his motion.

## IV. COGNIZABLE CLAIMS UNDER 28 U.S.C. § 2241

A federal prisoner may attack the validity of his conviction in a § 2241 petition if he can meet the requirements of § 2255(e)'s savings clause. See *U.S. v. Lurie*, 207 F.3d 1075 (8th Cir. 1999). The prisoner bears the burden of showing that the remedy under § 2255 would be "inadequate or ineffective to test the legality of his detention." § 2255(e); *Crawford v. Minnesota*, 698 F.3d 1086 (8th Cir. 2012). A petitioner's inability to meet the procedural requirements of § 2255 is insufficient to meet this burden. See *Pack*, 218 F.3d at 452-53. Rather, a prisoner who wishes to proceed under the savings clause must establish that his claim "is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense" and that the claim "was foreclosed by circuit law at the time when the claim should have been raised." *Reyes-Requena*, 243 F.3d at 904. A petition for habeas corpus under 28 U.S.C. § 2241 must be filed in the district of confinement. See *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013). This Court

has jurisdiction to hear a habeas corpus petition under 28 U.S.C. § 2241 because it

is the closest U. S. District Court to where Bruce is incarcerated.

A petitioner may test the legality of his detention under § 2241 through the §

2255(e) savings clause where the target of the petition is a sentence enhancement, not

a conviction, by showing that he is "actually innocent." See *Hill v. Masters*, 836 F.3d

591 (6th Cir. 2016). Where a petitioner asserts factual innocence of his crime of

conviction due to a change of law, he may show that his remedy under § 2255 is

inadequate or ineffective by satisfying four conditions: (1) "the existence of a new

interpretation of statutory law," (2) "issued after the petitioner had a meaningful time

to incorporate the new interpretation into his direct appeals or subsequent motions,"

(3) that is retroactive, and (4) applies to the petition's merits such that it is "more

likely than not that no reasonable juror would have convicted" the petitioner. *Hill*,

836 F.3d at 595.

## V. <u>DISCUSSION</u>

As a preliminary matter, Bruce respectfully requests that the Court be mindful

that "a *pro se* complaint should be given liberal construction, we mean that if the

essence of an allegation is discernible ... then the district court should construe the

complaint in a way that permits the layperson's claim to be considered within the

proper legal framework." See *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015);

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (same).

A. **In Light of *Mathis v. United States*, 136 S.Ct. 2243 (2016), *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016) and *Holt v. United States*, (No. 16-1793) (7th Cir. Dec. 13, 2016), Bruce's Prior Convictions Do Not Qualify Him as a Career Offender, Requiring Resentencing Without the Career Offender Enhancement.**

In this case, Bruce asserts factual innocence of his sentence enhancement due to a change of law. As such, Section 2255 is inadequate or ineffective because of: (1) the existence of new interpretation of statutory law in *Descamps* and *Mathis*, (2) which was issued after Bruce had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions, (3) that is retroactive, and (4) applies to the petition's merits such that it is more likely than not that no reasonable trier of fact would have enhanced his sentence. See *Wooten,* 677 F. 3d at 307–08.

Bruce's sentence was driven by his sentencing enhancement pursuant to USSG § 4B1.121. This enhancement virtually doubled his sentence. As such, because he is actually innocent of said enhancement, he should be resentenced to a significantly less harsh sentence.

In order for Bruce to proceed under 28 U.S.C. § 2241, he must must show that his remedy under § 2255 is inadequate or ineffective by satisfying four conditions: (1) "the existence of a new interpretation of statutory law," (2) "issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions," (3) that is retroactive, and (4) applies to the petition's merits such that it is "more likely than not that no reasonable juror would have [enhanced his sentence]". *Hill,* 836 F.3d at 595.

Bruce meets the above requirements as follows:

*Descamps* and *Mathis* are both new interpretations of statutory law, which were issued after Bruce had a meaningful time to incorporate the new interpretation into his direct appeal or subsequent motions. In *Hill,* the government conceded that *Descamps* was retroactive. In *Holt v. United States,* 843 F.3d 720 (7th Cir. 2016), the Court held that substantive decisions such as *Mathis* presumptively apply retroactively on collateral review. See, e.g., *Davis v. United States* , 417 U.S. 333, 94 S.Ct. 2298 (1974); *Montgomery v. Louisiana* , 136 S.Ct. 718 (2016).

These cases apply to the petition's merits such that it is "more likely than not that no reasonable juror [or trier of fact] would have [enhanced his sentence]". *Hill,* 836 F.3d at 595.

14

In this case, the District Court erred in determining that Bruce was a career offender within the meaning of USSG § 4B1.1, which provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The district court classified Bruce as a career offender under USSG § 4B1.1 because of his prior convictions. Bruce contends that his—Delivery of a Controlled Substance in the Circuit Court for Cook County, in violation of 720 ILCS 570/401—should not have been classified as a "controlled substance offense" for the purpose of § 4B1.1(a)(3) because the elements of that Illinois crime differ from the definition in §4B1.2(b).

Illinois Controlled Substances Act: 720 ILCS 570/401, states:

> § 401. Manufacture or delivery, or possession with intent to manufacture or deliver, a controlled substance, a counterfeit substance, or controlled substance analog.

Section 4B1.2 of the Guidelines defines a controlled substance offense as follows:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit

substance) with intent to manufacture, import, export, distribute, or dispense. USSG § 4B1.2(b).

The question in this case is whether the Illinois statutes under which Bruce was convicted are "divisible." *See, e .g ., Descamps v. United States*, 133 S.Ct. 2276, 2281 (2013). A statute is "divisible" when it "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile." *Id.*

As the Supreme Court explained in *Descamps*:

> "[i]f one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendants prior conviction."

*Id.*

See *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), defendant Hinkle appealed his sentence, contending that the district court erred in determining that he was a career offender within the meaning of USSG § 4B1.1(a). Hinkle argued that neither of his prior Texas convictions, one for burglary and the other for delivery of a controlled substance, constituted a predicate offense under the career-offender guidelines provision. The Court's decision turned upon whether the particular Texas statutes at issue were divisible such that a court may use the modified categorical

approach to determine whether a defendant convicted under Texas law of knowingly delivering a controlled substance was convicted of delivery by one of the particular means proscribed under Texas law. In light of the Supreme Court's recent decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016), the *Hinkle* Court concluded that his conviction for delivery of a controlled substance is not a "controlled substance offense" within the meaning of the Guidelines, and therefore, the career-offender enhancement did not apply based on the record presently before the Court. The Court vacated Hinkle's sentence and remanded for resentencing without the career offender Guideline enhancement.

The definition of "deliver" in section 481.002(8) in conjunction with section 481.112(a) sets forth different offenses, such that delivering a controlled substance by "offering to sell" it is a separate and distinct offense from delivering a controlled substance by "transfer[ing], actually ..., to another a controlled substance." Hinkle contends that the various definitions of "deliver" in section 481.002(8) of the Texas statute are not elements of separate offenses but are various means of committing the offense of "deliver[ing] ... a controlled substance." The Government contends that the Texas indictment can be used to "narrow" the offense of which Hinkle was convicted to the offense of "deliver[ing] ... a controlled substance" by "transfer[ing] [it] actually ... to another." Both rely on *Descamps* in support of their respective positions.

In *Hinkle*, under the categorical approach, the government conceded that a conviction of delivering a controlled substance "by offering to sell" that substance, the crime would not come within the definition of a "controlled substance offense" under § 4B1.2.

Here, Bruce contends that the Illinois law should be treated the same way. The key phrase in § 4B1.2(b) is "manufacture, import, export, distribution, or dispensing". As with most other recidivist enhancements, these words are applied to the elements of the crime of conviction, not to what the accused did in fact. See, e.g., *Mathis v. United States*, 136 S. Ct. 2243 (2016).

In *Mathis*, the Supreme Court set forth how a court determines whether a statute is divisible and therefore whether, in employing the modified categorical approach, documents pertaining to the prior conviction may be used to ascertain if that conviction comes within a federal definition of an offense or has the elements of an enumerated offense. The decision in *Mathis* plainly and unmistakably leads to the conclusion that the definition of "possession" in section 481.002(8), as authoritatively interpreted by the Texas Court of Criminal Appeals sets forth various means of committing an offense and does not set forth in the disjunctive separate offenses. See *Lopez v. State*, 108 S.W.3d 293, 299 (Tex. Crim. App. 2003) (citing *Rodriguez v. State*, 89 S.W.3d 699, 701 (Tex. App.—Houston [1st Dist.] 2002, pet ref'd)).

The Supreme Court's decision in *Mathis* dealt with the Armed Career Criminal Act (ACCA), not the federal enhancement sentencing. However, the primary focus of the Court's decision in *Mathis* was how to determine whether a statute is "divisible" and therefore whether the modified categorical approach can be used to determine, when a statute defines more than one offense, of which offense a defendant was convicted. *Id.* The decision in *Mathis* clarified when and how the modified categorical approach is applied in the context of federal sentencing. With exceptions not relevant to this appeal, courts generally used the categorical and modified categorical approaches in applying the federal sentencing Guidelines. See, *e .g .*, *United States v. Sykes*, 844 F.3d 712 (8th Cir. 2016) (citing *Taylor v. United States*, 495 U.S. at 602, 110 S.Ct. 2143). The *Mathis* decision is controlling regarding the methodology of the modified categorical approach, and courts must now apply its holdings, even if they are contrary to prior precedent of this court.

The decision in *Mathis* instructs that there is a difference between alternative elements of an offense and alternative means of satisfying a single element. See *Mathis*, 136 S.Ct. at 2250. Elements must be agreed upon by a jury. *Id.* at 2256. When a jury is not required to agree on the way that a particular requirement of an offense is met, the way of satisfying that requirement is a means of committing an offense not an element of the offense. *Id.* At issue in *Mathis* was an Iowa burglary statute that

proscribed entry into or onto locations that included a building, a structure, land, water or an air vehicle. *Id*. at 2250; *see also,* Iowa Code§§ 702.12, 713.1. Because generic burglary does not proscribe burglary of vehicles, the Iowa offense was overly inclusive; it included conduct that was not generic burglary. *Mathis,* 136 S.Ct. at 2250. The sentencing court looked to the documents pertaining to Mathis prior convictions, which revealed that Mathis had burgled structures not vehicles, and the district court concluded that the sentencing enhancement under the ACCA applied. The Eighth Circuit affirmed, holding that whether the itemized list of places "amount[ed] to alternative elements or merely alternative means to fulfilling an element, the statute is divisible, and we must apply the modified categorical approach." The Supreme Court disagreed and reversed the Eighth Circuit because the Iowa Supreme Court has held that the Iowa statute sets forth "alternative method[s] of committing [the] single crime," and an Iowa "jury need not agree on which of the locations was actually involved." *Mathis*, 136 S.Ct. at 2250 (quoting *State v. Duncan,* 312 N.W.2d 519, 523 (Iowa 1981)).

If the elements of the defendant's crime of conviction criminalizes a "greater swath of conduct than the elements of the relevant [Guidelines] offense" [*Mathis*, 136 S. Ct. at 2251] . . . [T]his "mismatch of elements" means that his conviction for the knowing possession with intent to deliver is not a controlled substance offense under

the Guidelines. *Id.* That prior conviction cannot serve as a predicate offense under the Career Offender Guideline provision, which is § 4B1.1. *Id.*

Without the career offender enhancement, Bruce's Base Offense Level would have been 28 (pursuant to November 1, 2007 U.S. Sentencing Guidelines Manual). Bruce did not receive any addition or reduction to his offense level, therefore, his Total Offense Level would have been 28, in Criminal History Category VI, yielding an advisory guideline range of 140 to 175 months, a significantly less harsh Guideline range. Bruce should be resentenced absent his career offender enhancement to a term of 140 months, at the most.

It is also essential to note that during the Resentencing hearing, Michael Lieberman ("Lieberman"), Bruce's counsel, stated that:

> "I do think it's worth noting that in paragraph 20 of the pre-sentence report, it notes that all of the cocaine that Mr. Bruce was getting was powder, and as the Court knows, if it stays as powder, then Mr. Bruce's offense level, . . ."

See Doc. 115 at 8.

Apparently, Lieberman's inquiry about the "powder" cocaine was not given the proper merit as the Judge ignored his statement (no acknowledgment) by diverting the conversation to Bruce, saying: "Thank you. Mr. Bruce, is there anything you wish to say? *Id.* at 9. Accordingly, Base Offense Level between "powder" and "crack" cocaine would show significant disparity.

21

**B.** **In Light of *Descamps v. United States*,133 S.Ct. 2276 (2013) and *Mathis v. United States*, 136 S.Ct. 2243 (2016), Bruce's Prior Conviction Enhancement Under 21 U.S.C. § 851 is Null and Void.**

Bruce's prior conviction—Delivery of a Controlled Substance in the Circuit Court for Cook County, triggered a minimum sentence of 20 years, under 21 U.S.C. § 851. As such, because he is actually innocent of said enhancement, he should be resentenced to a significantly less harsh sentence.

In this case, at sentencing, the district court "erred in failing to conduct a colloquy required under 21 U.S.C. § 851(b). When the government files a notice pursuant to 21 U.S.C. § 851(a) to establish prior conviction(s) and thereby secure an increase in the defendant's sentence, "the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted a alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." 21 U.S.C. § 851(b). The district court in this case failed to do so. This was clear error by the court.

How 21 U.S.C. § 851 Works

If the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), and the prosecutor filed a notice before trial or entry of a guilty plea under 21

U.S.C. § 851 of one "prior conviction for a felony drug offense," the statutory range increases from 10 years to life to 20 years to life. If the prosecutor filed a notice of two "prior convictions for a felony drug offense," the statutory range increases from 10 years to life to LIFE.

See 21 U.S.C. § 851.

A "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year … that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44).

Whether a defendant eligible for a Section 851 enhancement actually received a Section 851 enhancement depends on the district in which he was sentenced, resulting in extreme disparity. "For unknown and unknowable reasons, federal prosecutors have been applying massive numbers of Section 851 enhancements in many districts and not in others." *United States v. Young*, 960 F. Supp. 2d 881, 903 (N.D. Iowa 2013) (summarizing the disparity as "stunningly arbitrary"); U.S. Sent'g Comm'n, Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 253, 255 (2011) (reporting a "lack of uniformity" in the application of Section 851 enhancements, with prosecutors in some districts filing Section 851 enhancements in over 75% of cases in which the defendant was eligible for the enhancement while prosecutors in other districts filing no Section 851 enhancements in any case in which the defendant was eligible).

Here, Bruce argues that the District Court erred in imposing a statutory minimum sentence for a "prior conviction for a felony drug offense," under 21 U.S.C. §§ 841 and 851, based on his prior drug convictions under Ohio Revised Code ("O.R.C.") 2925.11. Bruces' offense was committed in 1995. During this time, Ohio had in its sentencing provisions and statutes, defined "felony drug offense" as one which excludes an offense for drug abuse under, in violation of 720 ILCS 570/401.

As discussed herein, Bruce's prior convictions may no longer qualify as a § 851 predicate under the proper application of the "modified categorical approach," as clarified in *Descamps* and *Mathis*. The basics are as follows: Courts apply the "categorical approach" to determine whether a defendant was convicted of an offense with the requisite elements to qualify as a predicate "drug offense" under § 851. See *Descamps*, 133 S. Ct. at 2281-82. Under this "elements-based" approach, the prior conviction must be for an offense having the same (or narrower) elements as the applicable definition of the qualifying offense. *Id.* at 2285-86. If, by its elements, the statute of conviction sets forth a single, "indivisible" crime that applies more broadly than the qualifying offense (i.e., it applies to an offense that is not criminalized under the definition of the qualifying offense), the prior conviction cannot be a predicate. See *id.* at 2285-86, 2293. If the statute of conviction is "divisible" into alternative elements, some of which constitute a predicate and some of which do not, the court

24

is permitted to look beyond the judgment to a limited set of case-specific documentation—i.e., the charging document and jury instructions or bench trial findings of the court if the defendant was convicted at trial, *Taylor v. United States*, 495 U. S. 575, 602 (1990), and the plea agreement and plea colloquy transcript (or "some comparable judicial record of this information") if the defendant pled guilty, *Shepard v. United States*, 544 U. S. 13, 25-26 (2005)—to determine the elements of the offense of which the defendant was convicted, *Descamps*, 133 S. Ct. at 2283-84. If the elements of the offense of conviction cannot be determined from these documents without regard to the underlying facts, it must be assumed that the conviction was for the least culpable crime, i.e., the non-qualifying offense, see *Johnson v. United States*, 559 U.S. 133, 137 (2010), and thus the prior conviction under that statute cannot qualify as a predicate offense. This is called the "modified categorical approach," and is intended only as a "tool for implementing the categorical approach." *Descamps*, 133 S. Ct. at 2284.

## V. <u>CONCLUSION</u>

For the above and foregoing reasons, Bruce's sentence should be vacated for resentencing without the career offender and § 851 enhancement. In the alternative, an evidentiary hearing should be held so that Bruce may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

Dated: January 24, 2018

CALVIN BRUCE
REG. NO. 06412-090
FCI SANDSTONE
FEDERAL CORR. INSTITUTION
P.O. BOX 1000
SANDSTONE, MN  55072
Appearing *Pro Se*